## B. F. WIGGINS, Adm'r *v.* W. W. GILL.

CONTRACTS. *Conditions Precedent.* The defendant purchased two judgments against one Dwiggins, of the plaintiff, upon condition that he would file a bill and invalidate a mortgage held upon the land of Dwiggins; the plaintiff succeeded in setting aside only a portion of the mortgage, such as was given for Confederate money. *Held,* this is a contract dependent on the condition precedent, and the simple question is, whether it had been performed. It was error, therefore, to charge the jury concerning impossible conditions, for if the thing promised be possible, it is no excuse that the promisor became unable to perform it by causes beyond his control. The Court say, "As there appears proof in the case, tending to show that it is probable, that both parties supposed that the entire debt of Warren was for Confederate money, we can see how this part of his charge may have mislead them, by putting the case on an erroneous ground, and leading the jury to find for the defendant, because of this fact, when it was not the real question submitted to them by the pleadings in the case."

Case cited : Benj. on Sales, 424–5–6, p. 36–7.

FROM BEDFORD.

Appeal from the Circuit Court. W. H. WILLIAMSON, Judge.

T. B. IVIE, THOS. R. MYERS and J. A. WARDER for Wiggins, Adm'r.

GEO. COOPER for W. W. Gill.

FREEMAN, J., delivered the opinion of the Court.

This is an action brought alleging the breach of the following contract, substantially. That plaintiff

had two judgments before a Justice of the Peace of
Bedford County, against R. S. Dwiggins, which the
defendant agreed to purchase, and did purchase, on
condition that the plaintiff would file a bill in the
Chancery Court at Shelbyville, against said Dwiggins
and C. A. Warren, for the purpose of invalidating
and setting aside a mortgage or deed of trust, which
C. A. Warren held on the land of Dwiggins, the de-
fendant Gill having also a deed of trust on the same
property, and procuring a decree invalidating the con-
federate portion of said Warren mortgage, or the amount
thereof, which was Confederate money.    In addition
to this, plaintiff was to make the mill property, which
was included in the mortgage bring at the sale by
defendant, the sum of $2,000.

The declaration alleges, that in consideration of the
above premises, the defendant purchased said judgment
at the price of fifty cents on the dollar, and that the
plaintiff had performed his part of the agreement, but
defendant had failed, and refused as to his undertak-
ing.    An issue was made on these allegations, upon
which a trial was had, a verdict rendered by the jury
for defendant under the instructions of the Court, from
which an appeal in error to this Court is prose-
cuted.

The bill of exceptions fails to show that it con-
tains all the evidence submitted to the jury, so that
we need not examine the question as to the weight
of the proof, but only see what questions were legi-
timately raised on the facts, in order to determine the

correctness of his Honor's charge, as applicable to the facts before us..

The proof on the part of the plaintiff makes out his case; the proof on the part of the defendant, tends to show, that the entire mortgage was to be set aside, and in other respects to sustain the opposite of the plaintiff's case. It further shows, that the bill was filed by plaintiff, and sought to have the entire mortgage set aside, but that the decree of the Chancellor only found that about $14,000 of the mortgage debt of Warren was for Confederate money, and that $2,000 of it was Southern Bank notes, the debt being upwards of $16,000, and decreed the mortgage valid as to the $,2000, but invalid as to the balance. His Honor, the Circuit Judge, charged the jury very accurately on the main issue presented. He told the jury in substance, that if the condition precedent to the performance of the contract, was that Wiggins was to file the bill and set aside the mortgage to the extent of the Confederate money embraced in it, and had obtained a decree to that effect, the jury should find for the plaintiff. But on the other hand if they found from the proof, that the decree did not set aside the whole of the Warren debt, and the condition was that the whole debt should be set aside, then they should find for the defendant.

Here his Honor might have stopped. It was a plain question of a contract dependent on the condition precedent stated in the declaration, and the simple question was, whether it had been performed

as alleged.    In addition to this, however, he pro-
ceeded to instruct the jury upon another question, that
seems to have been debated before him in the argu-
ment of counsel, as follows:    If under a mutual
mistake, Gill and Wiggins believed that the Warren
debt was a Confederate debt, and, therefore, fraudul-
ent, and the decree shows that only a part of said
debt was·a Confederate debt, and the balance a valid
debt, the condition precedent being impossible of per-
formance on that account, you will find for defendant.
In this statement his Honor has confused two very
distinct and different principles of law, and in his
conclusion given a wrong result, as following from his
last assumed premises, that is, that if the condition
precedent had become impossible, then the defendant
should have a verdict, or rather he has misapplied the·
principle as to impossible conditions, which is applica-
ble properly to the case of, when a party is sued for
a breach of his contract, and he alleges, that the con-
dition on which he was to ˙perform it had become
impossible, as by the act of God, or the act of govern-
ment, as by an Act of the Legislature forbiding the
act to be done.    As illustration of the rule, if a party
agree to sell and deliver his horse Eclipse, to another
on a fixed future day, and the horse die in the in-
terval, the obligation is at an end.    Benj. on Sales,
424.    Or as in the case of *Taylor* v. *Caldwell*, cited
by same author, p. 425, where an action was brought
for breach of promise to give the plaintiff the use of
a certain music hall, for four specified days, and the

defence was held effective, that the hall had been burnt down before the appointed days, so that it was impossible to fulfil the condition. The introduction of impossible conditions was out of place, as presented by his Honor under the above rules, and did not aid in reaching his conclusions, nor furnish any basis for it, on the facts assumed by him, nor was it in any way applicable to the case in hand, for it is settled that the conditions excusing performance on the part of a party bound, must be such as are in their nature impossible to be performed, or physically impossible to be done. But if the thing promised be possible in itself, it is no excuse that the promisor became unable to perform it by causes beyond his control, for it was his own fault to run the risk of undertaking unconditionally to fulfil a promise, when he might have guarded himself by the terms of his contract. Benj. on S., 425–6. The contract of the plaintiff not being in its nature one impossible of performance in the sense of the law, it was a simple question of fact, what the contract was, whether to get clear of the entire Warren debt, or only the part based on Confederate money, and whether the plaintiff had done what he agreed to do, so as to entitle him to call on the defendant to perform, or hold him responsible for failures.

The doctrine of mutual mistake, which is presented as an integral element on which to base the assumption of impossibility of performance, from which his conclusion is drawn that the jury should find for the

defendant, does not have any connection rightfully with the question of a condition impossible to be performed. The rule on that subject is well stated by Mr. Benjamin, p. 36, "that contracts can only be effected by mutual assent, therefore it follows, that when through mutual mistake of fact, each was assenting to a different contract, there is no real valid agreement, notwithstanding the apparent mutual assent." An illustration of the principle is found in the case of sale of ten tons of sound merchantable hemp, but it was intended by the vendor to sell St. Petersburgh hemp, and by the buyer to purchase Riga Rhine hemp, a superior article, and it was held, that there was no contract, the assent of the parties not having been given to the selling and buying of the same subject matter. *Thornton* v. *Kemper*, 5 Taunt., and other cases cited by Benjamin, 36–37. But then, as says Mr. Benjamin, "we must not confound the cases of mutual mistake as to the subject matter of the sale, or the price, or the terms, which prevent the sale ever coming into existence by reason of the absence of consent to the same thing by the parties, with a mistake made by one of the parties as to collateral fact, or what might be termed a mistake in motive. If the buyer gets the very article he purchases on the terms agreed on, the contract is complete, even though one or the other may be mistaken totally in the motive that induced the assent, as in the case of purchase of a machine from a Patentee, for a particular use, but which on trial totally failed to serve the purpose, it was

10—vol. 3.

B. F. *Wiggins. Adm'r. v.* W. W. Gill.

held, this was no defence against the payment of the price.

These well settled principles, as we have said, are confounded together by his Honor the Circuit Judge improperly, and in the form presented have no application to the real issues made on the pleadings. The one sold or agreed to sell his judgments, the other to buy these identical judgments on a certain condition, the only question was, whether the condition had been performed. The only question on which we find difficulty is, whether this error of his Honor was a mere abstract proposition, or did it necessarily tend to mislead the jury in arriving at their conclusion. As there appears proof in the case, tending to show that it is probable, that both parties supposed that the entire debt of Warren was Confederate money, we can see how this part of his charge may have mislead them, by putting the case on an erroneous ground, and leading the jury to find for the defendant because of this fact, when it was not the real question submitted to them by the pleadings in the case. A lawyer would not probably have been mislead, a jury might all have been so misled.

As to the question raised by the request of plaintiff, on the assumption that the plaintiff was mislead by the representation of Gill, that the whole of the debt was Confederate money, it is sufficient to say, that no such question was made by the pleadings; no such case having been alleged, therefore, his Honor did not err in refusing to charge as requested, however sound

the principle might be, as stated in the instructions asked for. The result is, that for the error pointed out, the case will be reversed, and remanded for a new trial.